IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

JOLENE GALLEGOS

    Plaintiff,

v.

HOSTED RECORDS, INC.

    Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Jolene Gallegos, by and through her attorneys, Baird Quinn LLC, for her Complaint against the above-named Defendant, alleges as follows:

## I. INTRODUCTION

1. Plaintiff, Jolene Gallegos ("Plaintiff" or "Gallegos"), has initiated this action to redress violations of the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA" or "Act") by Defendant, Hosted Records, Inc. ("Defendant" or "HR") among other claims.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 and 29 U.S.C. § 2615(a)(2) because Plaintiff has raised federal claims under the FMLA.

3. This Court also has subject matter jurisdiction due to diversity of citizenship under 28 U.S.C. § 1331, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over Defendant because

it conducted business in Colorado and employed Plaintiff in Colorado, thus creating sufficient minimum contacts with this judicial district that the exercise of such jurisdiction comports with judicial notions of fair play and substantial justice.

5. Pursuant to 28 U.S.C. § 1391, venue is properly laid in this district because Defendant conducted substantial, systematic, and continuous activity in this district, are subject to personal jurisdiction in this district, and because all of the acts underlying this lawsuit occurred in this district.

### III. PARTIES

6. Plaintiff is an individual who resides in Colorado.

7. Defendant is a Delaware corporation with a corporate address of 108 West 13th Street, Wilmington, Delaware. It is a multi-faceted business which provides records management services, IT security, cloud services and other services to clients. As relevant here, Defendant provided contract records management services to laboratories of the U.S. Food and Drug Administration (USFDA).

8. Upon information and belief, Defendant has 50 or more employees nationally.

### IV. FACTUAL BACKGROUND

9. Plaintiff was employed by Defendant as a Laboratory Records Administrative Assistant, placed at Defendant's client, the USFDA, to perform document scanning and maintenance at their lab in the Federal Center.

10. Plaintiff was employed by Defendant full-time for approximately two years.

11. On or about February 29, 2020, Plaintiff's mother experienced a serious health condition and was totally unable to care for herself. Plaintiff was advised by her mother's treating physician that her mother needed round the clock supervision.

12. On March 2, 2020, Plaintiff requested Family Medical Leave from Defendant's Vice-President of Human Resources, Lizette Zurita, to care for her mother who is also disabled. Plaintiff explained to Ms. Zurita that her mom had numerous chronic health problems and was suffering from a serious health condition.

13. At the time, Defendant's employee handbook offered leave under the FMLA to any employee who had worked for the company for at least 12 months and had worked at least 1,250 hours during the prior 12-month period.

14. Ms. Gallegos met those eligibility criteria.

15. As Plaintiff had read the employee handbook, Plaintiff responded that she believed she was entitled to family medical leave and wanted to fill out the necessary paperwork. Ms. Zurita told Plaintiff she would have to check and get back to Plaintiff.

16. While waiting for a response, Plaintiff worked as much as she could despite the dangers to her mother.

17. On March 4, 2020, Plaintiff's mother was exhibiting symptoms of a stroke and was not coherent. Plaintiff left work early to care for her mother and take her to a physician.

18. On March 5, 2020, Plaintiff contacted Ms. Zurita to explain the situation and again asked what she needed to do to obtain Family Medical Leave so that she could care for her mother.

19. Plaintiff advised both Defendant and the USFDA of her mother's disabilities and current serious health condition.

20. Having received no response, Plaintiff again contacted Ms. Zurita later the same day to find out what she needed to do to obtain Family Medical Leave. Ms. Zurita responded that she would get back to Plaintiff with an answer, but she did not.

21. While Plaintiff waited for direction on FMLA leave, Plaintiff's mother continued to have serious medical problems and was in and out of the hospital over the next week.

22. On Sunday, March 15, 2020, Plaintiff again contacted Ms. Zurita to let her know that her mother remained unable to care for herself and that she was seeking to provide the care for her under the FMLA.

23. That same day, Ms. Zurita called Plaintiff and told Plaintiff she was still waiting to hear on whether Family Medical Leave would be granted because the COVID-19 pandemic had stranded Jacqueline Rosado, Chief Financial Officer, in Florida and she needed to touch base with her.

24. Ms. Zurita also told Plaintiff that she thought she should return to work.

25. Plaintiff communicated to Ms. Zurita that she was seeking to care for her mother who was not able to care for herself and that is why she requested the FMLA paperwork.

26. On March 16, 2020, Plaintiff again explained that her mother had lung disease, required supplemental oxygen, had diabetes and a heart condition, and was facing a wide variety of health issues and needed to care for her.

27. On March 17, 2020, Ms. Zurita initially emailed Plaintiff that FMLA leave would not be available.

28. Plaintiff asked why the handbook allows for FMLA if it is not offered.

29. Within twenty minutes of Ms. Zurita's initial email, Ms. Zurita sent Plaintiff the Family Medical Leave paperwork required by the company to request or initiate leave. Ms. Zurita stated "I've attached an FMLA form in reference to your mother's condition. We have filled out Section 1, you must fill out Section 2, and Section 3 must be filled out by a health care provider."

30. At or about the same time, Ms. Rosado informed Plaintiff that Defendant does in fact offer Family Medical Leave, that is unpaid, and that she should fill out the paperwork provided by Ms. Zurita.

31. That same day, Plaintiff informed Ms. Zurita that her mother had been taken by ambulance to the hospital, that she was caring for her, and that she would get the FMLA paperwork submitted after she connected with her mother's doctor.

32. Plaintiff relied on Hosted Records' representations that she was eligible to take leave under the FMLA and begin taking employer approved leave under the FMLA.

33. Plaintiff understood that she was exercising her rights under the FMLA and taking FMLA leave to care for her mother.

34. On or about March 24, 2020, Defendant contacted Plaintiff to determine when she could return to work. Although Plaintiff was not told that leave was no longer available to her, or that she must come back to work, Plaintiff sensed that Defendant wished her to go back to work. Wanting to be a team player, Plaintiff agreed to try to return to work the following day.

35. However, Plaintiff also informed Defendant that her mother's physician was out of the office, returning on Monday, March 30, 2020, and that she had been informed he would be sending the Family Medical Leave paperwork in as soon as he returned to his office and filled it out.

36. Both the USFDA and Defendant were willing to have Plaintiff return to work on March 25, 2020.

37. Unfortunately, in the early hours of March 25, 2020, Plaintiff's mother fainted due to some of her ongoing health issues. Thus, Plaintiff informed both Defendant and the USFDA that she would not be returning to the office that day. She further stated that she would be submitting the FMLA paperwork once her mother's physician returned to the office.

38. In response to that email, the USFDA internally questioned whether they were bound by Plaintiff's request for FMLA and the corresponding obligation to return her to her position upon return from leave. The USFDA stated "[w]hat happens if she [Plaintiff] continues to excessively call in due to her family situation?"

39. On and after March 25, 2020, Plaintiff continued on FMLA leave based on the representations of her employer.

40. At this point, Defendant provided USFDA with a resume for a temporary worker replacement.

41. In the early morning of March 27, 2020, Ms. Zurita called Plaintiff again to discuss her status.

42. Plaintiff informed Ms. Zurita that her mom was still incoherent and unable to care for herself, was unable to walk, to feed herself or take her medication. Plaintiff further stated that in addition, her mother had Stage 3 chronic kidney disease and COPD and that she was being referred to a lung specialist. Ms. Zurita said she understood, to take care of her mother and that the company was getting a temporary worker to fill in until Plaintiff returned from her leave.

43. In response to the offer of the temporary worker, the USFDA forwarded an email with its above-mentioned concerns to Defendant and stated that they wanted a permanent replacement, not a temporary, and asked Defendant to "please let [USFDA] know if this is possible."

44. The USFDA's request was based on the belief that Plaintiff would miss too much work in order to care for a disabled person. This was discriminatory and unlawful.

45. Rather than decline to engage in the discrimination and simply advise its client – in response to the client's question – that it was not possible to get a permanent replacement, Defendant immediately decided to terminate Plaintiff's employment.

46. Defendant decided to terminate Plaintiff without ever talking to Plaintiff, even though just hours earlier the company again represented to Plaintiff that she could in fact take FMLA leave to care for her mother and had further stated they would fill in with a temporary until she returned from leave.

47. Within hours, without ever alerting Plaintiff to the USDA communication, or giving Plaintiff the opportunity to return to work, Defendant terminated Plaintiff's employment stating: "…your employment with Hosted Records, Inc. is terminated effective today Wednesday [sic] 3/27/2020. Your termination of employment is the result of unreliable performance due to lack of attendance at our Client's site at FDA-Lakewood, CO."

48. This was done despite the fact Defendant represented to Plaintiff, through its handbook, and direct comments to Plaintiff, that she was entitled to take leave under the FMLA to care for her mother.

49. This was done despite the fact Defendant provided Plaintiff with FMLA paperwork to be filled out for her "mother's condition."

50. This was done despite the fact Defendant represented to Plaintiff that it would get a temporary worker to replace her until she returned from leave.

51. Instead, Plaintiff's employment was terminated because she used FMLA leave that had been authorized by Defendant and because she was being discriminated against.

52. Defendant violated the FMLA by interfering with Plaintiff's rights to take FMLA leave, firing her in retaliation for taking medical leave due to the need to care for her mother who had an FMLA-qualifying serious health condition, and/or by discriminating against her in violation of the Act, among other unlawful activity and violations of law.

53. Defendant further discriminated against Plaintiff based on her association with a person with a disability and Plaintiff has filed a Charge of Discrimination with the U.S. E.E.O.C. which must be administratively exhausted before these issues could be joined with this suit.

54. Although Defendant should have provided Plaintiff paid leave pursuant to Executive Order 13706 throughout her employment, it did not. Executive order 13706 requires federal contractors such as Defendant to pay up to seven days of paid sick leave for the care of a parent with a health condition or illness.

55. Plaintiff has been damaged by Defendant's unlawful actions and seeks relief identified herein.

## COUNT I
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

56. Plaintiff incorporates the preceding allegations of this Complaint as if fully set forth herein.

57. Plaintiff was an eligible employee under the definitional terms of the FMLA.

58. At the time Plaintiff requested leave, Plaintiff had been employed by Defendant for at least twelve (12) months.

59. Plaintiff had worked at least 1,250 hours for Defendant during the twelve (12) months prior to taking her FMLA leave of absence.

60. To the extent Defendant contends they did not employ fifty (50) or more employees within seventy-five (75) miles of the location where Plaintiff worked, or any other similar contention, Defendant is equitably estopped from asserting Plaintiff was not an eligible employee under the FMLA because of its affirmative representations of coverage identified herein and because Plaintiff reasonably and detrimentally relied on those representations.

61. Plaintiff requested leave for an FMLA-qualifying serious health condition of her mother.

62. Plaintiff was entitled to receive at least 15 days to turn in the FMLA paperwork she had been provided.

63. On his return to his office, on April 1, 2020, within 15 days of Plaintiff's receipt of the FMLA paperwork from Defendant, Plaintiff's mother's physician filled out the Certificate of Health Provider attesting to the mother's continuing, serious health condition and provided it to Plaintiff.  Plaintiff's employment, however, had already been terminated.

64. Plaintiff was entitled to leave pursuant to the FMLA and Defendant was not permitted to retaliate against Plaintiff for exercising her rights under the FMLA or to allow its client to retaliate for the exercise of those rights.

65. Defendant did, however, interfere with Plaintiff's rights and retaliate and

discriminate against Plaintiff in violation of the FMLA, including by terminating Plaintiff for taking or requesting FMLA protected leave.

66. Plaintiff has been damaged in an amount to be proved at trial.

## COUNT II
## PROMISSORY ESTOPPEL

67. Plaintiff incorporates the preceding allegations of this Complaint as if fully set forth herein.

68. Defendant promised to provide Plaintiff with FMLA leave and affirmatively represented to her that they understood her need to take the leave and would work with her. Defendant did this in order to induce Plaintiff to take leave which it would later say was unavailable to her.

69. Defendant knew that Plaintiff would rely on these representations to take FMLA leave when she needed to take care of her mother and was unable to work.

70. Plaintiff reasonably and detrimentally relied upon these representations when she took FMLA leave from Defendant to care for her mother.

71. Defendant broke its promises to Plaintiff by retracting the leave offer after she had taken the leave and terminating Plaintiff for her absence while taking leave.

72. Injustice can only be avoided by enforcing Defendant's promise to provide Plaintiff with leave and to further provide employment upon her return, thus precluding her termination on that ground.

73. Plaintiff suffered damages, including the termination of her employment and significant emotional distress, as a result of Defendant's actions as alleged herein.

## COUNT III
## PUBLIC POLICY WRONGFUL DISCHARGE

74. Plaintiff incorporates the preceding allegations of this Complaint as if fully set forth herein.

75. Defendant's decision to discharge Plaintiff violated the public policy of the State of Colorado and the United States in that Plaintiff was discharged for exercising her rights to request and take leave under the FMLA and pursuant to Executive Order 13706 which provides paid leave to employees of federal contractors, to which Defendant was subject.

76. Plaintiff has been damaged by the tortious conduct of Defendant as alleged above by being deprived of income, continuing employment, and the opportunity for other employment benefits, in an amount to be proven at trial.

77. In addition, Plaintiff has suffered emotional distress as a result of Defendant's tortious actions against her.

78. The tortious actions of Defendant as alleged above were engaged in intentionally, and with malice or with a reckless indifference to Ms. Gallegos' rights.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions reinstatement, vacation and seniority.

B. Plaintiff be awarded liquidated damages pursuant to the FMLA because Defendant's violations of the FMLA were willful.

C.  Plaintiff be awarded damages for emotional distress caused by Defendant's unlawful conduct.

D.  Plaintiff be awarded attorneys' fees, costs, pre-and post-judgment interest and accorded all other equitable and legal relief as the Court deems just, proper and appropriate or that is allowed under state or federal law, including but not limited to ordering reinstatement and all other equitable relief necessary to remedy the Defendant's practices and to prevent its repetition.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 22nd day of December, 2020.

BAIRD QUINN LLC

S/ *Beth Doherty Quinn*
J. Mark Baird, #22276
Beth Doherty Quinn, #26015
2036 East 17th Avenue
Denver, CO  80206
Telephone:  303-813-4500
Facsimile:   303-813-4501
jmb@bairdquinn.com
bdq@bairdquinn.com